O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Affirming the Decision of the United States Bankruptcy Court for the Central District of California

Pending before the Court is an appeal of a decision of the United States Bankruptcy Court. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. After considering the arguments raised in the papers, the Court AFFIRMS the Bankruptcy Court's decision.

I.   Background

This case is an appeal of a decision of the United States Bankruptcy Court for the Central District of California granting Monteleone & McCrory, LLP's ("M&M") Motion for Summary Judgment and denying Modtech Structures, LLC's ("Modtech LLC") Cross-Motion for Summary Judgment. *See Appendix to Appellant's Opening Brief* (Dkt. #16) (hereinafter "*App.*") at 189, 225-26. The Bankruptcy Court held that Modtech owed M&M $776,336.39, an amount secured by a valid attorney's lien. *See App*. at 196. The Bankruptcy Court's decision on the Motions for Summary Judgment was based on a joint stipulation of undisputed facts filed by the parties. *See App*. at 31-41. This background section is based on those undisputed facts.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

Modtech Holdings, Inc. ("Modtech")[1] was a corporation primarily engaged in construction. *Amended Stipulation of Undisputed Facts* (hereinafter "*ASUF*") #8; *App*. at 33. After negotiations between Ron Savona, Chief Operating Officer of Modtech, and Patrick Duffy of M&M, Modtech agreed to an arrangement where M&M would provide legal services to Modtech related to contract and construction issues. *ASUF* #1, 21; *App*. at 32, 34. That agreement was formalized when Modtech and M&M executed a written retainer agreement on November 12, 2004 (the "Agreement"). *ASUF* #14-15; *App*. at 33-34. The agreement provided for an attorney's charging lien (the "Lien") through which any recovery obtained by M&M on Modtech's behalf could be used to pay M&M for "the full amount of attorneys' fees and costs owed to [M&M] on all matters." *App.* at 46.

Upon initial review of the Agreement, Mr. Savona did not note any terms or conditions that he believed were unfair or unreasonable to Modtech. *ASUF* #16; *App*. at 16. In addition, Mr. Savona was given a reasonable period of time to review the Agreement and consult with other counsel of his choosing regarding the terms and conditions. *ASUF* #17-18; *App*. at 34. Mr. Savona chose not to consult with another lawyer regarding the terms and conditions of the Agreement, *ASUF* #19; *App*. at 34, and prior to executing the Agreement, Mr. Savona did not have any questions about any terms or conditions, *ASUF* #20; *App*. at 34. Neither party recalls any separate discussion regarding the Lien provision. *ASUF* #21; *App*. at 34. Mr. Savona understood that, by signing the Agreement, Modtech agreed to compensate M&M on an hourly basis for services provided by its lawyers, paralegals and consultants along with reasonable costs and expenses. *ASUF* #22; *App*. at 35.

Between November 12, 2004 and October 19, 2008, Modtech employee Jim Gasper requested that M&M provide various legal services.[2] *ASUF* #29, 40; *App*. at 36-37. As part of Mr. Gasper's duties, he was to report the status of legal matters to Mr. Savona and review and approve legal invoices sent to Modtech from M&M. *ASUF* #31-32; *App*. at 36.

---

[1] Modtech Holdings, Inc. ("Modtech") was a corporation represented by M&M, a law firm, at all points up until Modtech filed for bankruptcy on October 20, 2008. *See ASUF* #34; *App*. at 36. Appellant Modtech *LLC* was not formed until September 22, 2009 after Laurus Master Fund, Ltd. ("Laurus") and others purchased Modtech's assets. *ASUF* #46; *App*. at 39. Laurus then "designated Modtech [LLC] to take title to certain assets of Modtech[]." *ASUF* #46; *App*. p. 39. Thus, all references to Modtech refer to Modtech Holdings, Inc. unless otherwise noted.

[2] Modtech authorized Jim Gasper to make legal-services requests. *ASUF* #27; *App*. at 35.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

All of the recoveries to which M&M contends its Lien attaches are based on commercial contract claims. *ASUF* #38; *App*. at 37. Between November 12, 2004 and October 19, 2008, M&M represented Modtech in a number of litigation matters including: (1) litigation against the San Diego Unified School District in connection with the manufacture and installation of the Porter and Kennedy Elementary School Projects ("Porter/Kennedy Elementary Schools"); (2) litigation against the Liberty Union High School District regarding Modtech's work on the 2005 Heritage High School Project ("Heritage High School"); (3) litigation against the Campbell Union Elementary School District seeking damages in excess of $4 million ("Monroe Middle School"); and (4) litigation against JT Plastering, Inc., a subcontractor of Modtech, arising from services performed on the Landmark Elementary School located in Watsonville, California ("JT Plastering"). *ASUF* #40; *App*. at 37.

When Modtech filed for bankruptcy on October 20, 2008, M&M was retained as special counsel in connection with these four litigation matters, for which M&M was owed $776,336.39 in legal fees, a figure the parties agree is reasonable. *ASUF* #34-35. M&M agreed to place all settlement and litigation proceeds obtained on behalf of Modtech into a blocked debtor-in-possession ("DIP") account. *ASUF* #41; *App*. at 38. M&M filed a timely Amended Proof of Claim in the bankruptcy proceeding on February 23, 2009. *ASUF* #42; *App*. at 38, 52. While acting as special counsel, M&M recovered $46,519.55 and $313,728.35 in connection with the JT Plastering and Heritage High School matters, respectively, after deducting for court-ordered/agreed upon fees and costs. *ASUF* #43; *App*. at 38. These funds have been placed in a blocked DIP account maintained by Modtech and identified as "Modtech Litigation Fund Account" maintained at US Bank. *ASUF* #44; *App*. at 39.

On September 22, 2009, Modtech LLC was formed. *ASUF* #45; *App*. at 39. On November 12, 2009, Laurus Master Fund, Ltd., a Cayman Islands company, Valens Offshore SPV II, Corp., a Delaware corporation, and Valens U.S. SPV I, LLC, a Delaware limited liability company, purchased certain assets of Modtech and designated Modtech LLC to take title to them. These assets included claims, causes of action and proceeds from the Porter/Kennedy Elementary Schools, Heritage High School, Monroe Middle School, and JT Plastering matters (the "Modtech Purchased Assets"), subject to, and contingent upon, the final determination of the validity, priority, extent and amount of the M&M claimed attorney's Lien. *ASUF* #46; *App*. at 39, 40. Although the Agreement contained the Lien, M&M never filed a UCC financing statement with the California Secretary of State with respect to any lien or other right it had against Modtech arising under the Agreement. *ASUF* #36; *App*. at 36. Moreover, Laurus, a purchaser of Modtech assets, never filed a UCC financing statement with the California Secretary of State with respect to any lien or other rights against Modtech, and did not

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

file a UCC financing statement with the Delaware Secretary of State until September 26, 2006. *ASUF* #37; *App*. at 37.

As discussed, Modtech appeals the Bankruptcy Court's determination that M&M has a valid attorney's charging lien and is entitled to $360,391.90 recovered in connection with the JT Plastering and Heritage High School matters.

II. Standard of Review

"The district court reviews a bankruptcy court order granting summary judgment de novo." *Thrifty Oil Co. v. Bank of America Nat. Trust and Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002). "The district court may affirm on any ground supported by the record, even if it differs from the ground relied upon by the bankruptcy judge." *Id.* Bankruptcy courts must apply state law to determine the validity and extent of liens, *In re Southern California Plastics, Inc.*, 165 F.3d 1243, 1248 (9th Cir. 1999), looking first to the decisions of the state supreme court, and in the absence of a supreme court decision, looking to decisions of intermediate appellate courts absent convincing evidence the highest court of the state would decide differently, *In re Kirkland*, 91 B.R. 551, 554 (9th Cir. 1988). Accordingly, the Court applies state law on appeal to determine the validity of the Lien in question. Because the parties here stipulated as to all undisputed facts, the only disputes by the parties on appeal relate to the applicable law.

III. Discussion

Modtech advances two arguments as to why the Bankruptcy Court erred in granting M&M's Motion for Summary Judgment and holding that the Agreement & Lien provision are valid and enforceable. First, Modtech argues that the Bankruptcy Court erred when it determined that M&M provided Modtech sufficient disclosures to satisfy California Rule of Professional Conduct 3-300. *Opening Brief,* at 1. Second, Modtech argues that the Bankruptcy Court erred when it determined that M&M was not required to file a UCC financing statement with the California Secretary of State in order to perfect the M&M Lien. *Opening Brief*, at 1.

    A. <u>Did M&M Provide Modtech sufficient disclosures to satisfy California Rule of Professional Conduct 3-300?</u>

"An attorney's lien upon the fund or judgment which he has recovered for his compensation as an attorney in recovering the fund or judgment is denominated a charging lien." *Fletcher v. Davis*, 33 Cal.4th 61, 66, 14 Cal. Rptr. 3d 58 (2004) (citations omitted). "A charging

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

lien may be used to secure either an hourly fee or a contingency fee." *Id.* (*citing Cetenko v. United California Bank*, 30 Cal.3d 528, 531-32, 17 Cal. Rptr. 902 (1982)). In California, an attorney's lien is generally created by contract and not by the mere performance of services in a case. *Id.* (*citing Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1172, 121 Cal. Rptr. 2d 532 (2002)).

Because an attorney's charging lien is a security interest and adverse to a client, the California Supreme Court has instructed that "an attorney acquiring a charging lien against a client's future judgment or recovery . . . must comply with the requirements of [California Rule of Processional Conduct] 3-300." *Fletcher*, 33 Cal.4th at 71. Rule 3-300 sets forth the requirements that must be satisfied before an attorney may enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client. Specifically, California Rule of Professional Conduct 3-300 requires:

(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in *writing* to the client in a manner which should reasonably have been understood by the client; and
(B) The client is advised in *writing* that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and
(C) The client thereafter consents in *writing* to the terms of the transaction or the terms of the acquisition. (emphasis added)

California Rule of Professional Conduct 3-300 (emphasis added). Most notably, not only must the terms be fair and reasonable to the client and fully disclosed in a writing the client can reasonably understand, but the client must also be advised, in writing, that the he may seek independent legal advice and that he must consent to the terms in writing.

First, in this case, the requirement of a writing is satisfied because the Lien in question was contained in a written retainer agreement signed by the client, Modtech. *See App.* at 43. Because the dispute here is primarily about the Lien contained in the Agreement, the Court must determine if the terms of the Lien provision are fair and reasonable to Modtech and were fully disclosed in a writing Modtech should have understood. The language of the lien provision states:

> You hereby grant us a lien on any and all claims or causes of action which are the subject of our representation of you pursuant to this agreement, as well as any and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

> all other claims or causes of action which we may advance for you in connection with any other matter where we have been retained to act or have acted as counsel on your behalf. This lien shall be for the full amount of attorney's fees and costs owed to the firm on all matters, regardless of the matter or matters that those fees and costs relate to. This lien will be in addition to any other rights we may have to recover sums owing from you under this agreement. If you so desire, you may seek the advice of independent counsel of your choice with regard to the liens you are granting us hereunder, and we will of course give you the time necessary to do so. By signing this agreement you are consenting to the granting of the liens specified herein.

*App.* at 46.

In essence, the Lien provision here allows M&M to seek payment for attorney's fees and costs owed to the firm for services rendered by attaching a lien on any claims or causes of action advanced on the client's behalf. The terms of the Lien are fair because the attorneys limit the applicability of the Lien to recoveries obtained for the client and do not require the client to automatically forfeit any other property for the payment of fees. Additionally, the evidence suggests that Mr. Savona and Modtech thought the terms were fair in that Mr. Savona, after given the opportunity to do so, never noted any terms or conditions that he believed were unfair or unreasonable to Modtech. *ASUF* #16; *App.* at 16. Moreover, the terms are understandable and, prior to executing the Agreement, Mr. Savona did not have any questions about the terms or conditions. *ASUF* #20; *App.* at 34. Accordingly, the Court finds that the terms of the Lien were fair and reasonable and fully disclosed to Modtech in an understandable writing.[3]

---

[3] As noted by M&M in its Opening Brief, this provision is substantially similar to an example of a valid and enforceable lien provision provided by the authors of the *California Practice Guide: Professional Responsibility*. *See M&M Opening Brief,* at 16 (*citing* Vapnek & Tuft *et al.*, 5 *California Practice Guide: Professional Responsibility*, Form 5:EE (2006)). The *California Practice Guide* includes the following example of an acceptable attorney's lien provision:

> You hereby grant us a lien as security for the payment of fees and costs due and owing to us under this agreement. This lien will attach to . . . (*any recovery you may obtain, whether by arbitration award, judgment, settlement or otherwise, in this matter; or the property that is the subject of this transaction*). This lien could delay payments to you or receipt by you of some or all of any recovery you may obtain as a result of our services until any dispute over the amounts to be paid to us

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

      Next, the Court must determine if Modtech was informed in writing that it may seek independent legal advice.  By its own terms, the Lien clause states "[i]f you so desire, you may seek the advice of independent counsel of your choice with regard to the liens you are granting us hereunder, and we will of course give you the time necessary to do so."  *App*. at 46. Additionally, it is undisputed that Mr. Savona was given a reasonable period of time to review the Agreement and consult with other counsel of his choosing regarding the terms and conditions.  *ASUF* #17-18; *App*. at 34.  Although Mr. Savona chose not to consult with another lawyer regarding the terms and conditions of the Agreement, *ASUF* #19; *App*. at 34, Modtech was adequately informed in writing that it may seek independent legal advice, *see App.* at 46.

      Finally, the Court must determine if the client consented in writing to the terms of the transaction.  It is undisputed that Mr. Savona signed the Agreement on behalf of Modtech. *ASUF* #14-15; *App*. at 33-34.  Mr. Savona understood that by signing the Agreement Modtech agreed to compensate M&M on an hourly basis for services provided by its lawyers, paralegals and consultants, along with reasonable costs and expenses.  *ASUF* #22; *App*. at 35.  At the time of executing the Agreement, Mr. Savona had the authority of Modtech to do so.  *ASUF* #23; *App*. at 35.  Accordingly, Modtech consented to the terms of the transaction in writing.  Because all three requirements of California Code of Professional Conduct Section 3-300 were satisfied, the Lien provision is enforceable.

      Nevertheless, Modtech urges this Court to require that M&M do more than merely satisfy the requirements of Rule 3-300.  *Opening Brief,* at 9-12.  Modtech cites to the California Supreme Court's decision in *Beery v. State Bar of California*, 43 Cal.3d 802, 813, 239 Cal. Rptr. 121 (1987), for the proposition that Rule 3-300 requires an attorney to give his client "all that reasonable advice against himself that he would have given him against a third person." Modtech misunderstands *Beery*, however, and the facts of that case are distinguishable from the

---

is resolved.

> You may seek the advice of an independent lawyer of your choice about this lien
> provision and its consquences. By signing this agreement you acknowledge that
> you have been advised of the terms of this lien agreement and of your right to
> consult independent counsel and that you have been given a reasonable
> opportunity to seek such advice.

Vapnek & Tuft *et al.*, 5 *California Practice Guide: Professional Responsibility*, Form 5:EE.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

facts of this case. In *Beery*, an attorney pressured a client to invest in a company that the attorney had an interest in as a principal, investor and legal representative. *Beery*, 43 Cal. 3d at 808. The attorney knew that the company was having financial problems, *id.* at 809, the attorney did not advise the client to seek independent legal or investment advice, *id.*, the client did not consent to the transaction in writing, *id.* at 810, and the attorney did not tell his client what the company planned to do with the money, *id.* at 809. In sum, the attorney in *Beery* could not have satisfied the basic requirements of Rule 3-300 because he did not inform the client that the client could seek the advice of independent counsel and the attorney did not reduce their agreement to writing. *Id.* That is not the case here. Unlike *Beery*, the Agreement here was reasonably understandable and in writing, it informed Modtech of all pertinent information, and it was agreed to in writing.

Despite these differences, Modtech argues that this Court should require that an attorney seeking to enter into a lien agreement with his client go above and beyond the requirements of California Rule of Professional Conduct 3-300, and advise the client of the reasons an attorney's fee provision is adverse. Specifically, Modtech argues that M&M should have been required to discuss with Modtech that "a charging lien could significantly *impair* the client's interest by delaying payment of the recovery or settlement proceeds until any disputes over the lien can be resolved." *Opening Brief*, at 11 (*citing Fletcher*, 33 Cal. 4th at 68-69 (emphasis original)). The Court declines to expand the rule set out in the California Supreme Court's *Fletcher* decision for multiple reasons.

First, the Court notes that "[t]he Requirement of a writing ensures that the client has notice that the lawyer may detain part of any recovery and an opportunity to bargain for a different result." *Fletcher*, 33 Cal.4th at 70. Second, as discussed, Rule 3-300 "merely requires the attorney who wishes to obtain such a lien to explain the transaction fully, to offer fair and reasonable terms, to provide a copy of the agreement, to give the client an opportunity to seek independent legal advice, and to secure the client's written consent." *Id.* at 71. Third, the California Supreme Court has never required more than strict compliance with California Rule of Professional Conduct 3-300. *See id.* at 71-72 ("We therefore conclude that an attorney who secures payment . . . by acquiring a charging lien . . . must comply with the requirements of Rule 3-300."). Accordingly, the Bankruptcy Court correctly found that M&M complied with the requirements of Rule 3-300 to render the Lien valid and enforceable.

  B. <u>Was M&M required to file a UCC financing statement with the California Secretary of State in order to perfect the M&M Lien with respect to services unrelated to Modtech's recovery of the funds in question?</u>

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

California Commercial Code § 9310(a) states that "a financing statement must be filed to perfect all security interests and agricultural liens." Modtech reads this to mean that § 9310(a) requires attorney's fees liens to be accompanied by a filing statement in order to be perfected.[4] However, the California Supreme Court has held that attorney's liens do not need to be recorded in order to be effective because they are enforceable secret liens. *Cetenko v. United California Bank*, 30 Cal.3d 528, 533, 17 Cal. Rptr. 902 (1982) ("We know of no authority, case law or statute, which compels an attorney to give notice to a client's creditors of a contractual lien on the judgment. In other jurisdictions where the matter has been considered, it has been held that the filing of a notice of lien by the attorney is not necessary to protect his security interest against a creditor who levies on the judgment or an assignee of the judgment." (citations omitted)); *see also Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1172, 121 Cal. Rptr. 2d 532 (2002) (stating that unlike a judgment creditor's lien that is not created until a notice of lien is filed, an attorney's lien is a secret lien that is created, and the attorney's security interest is protected, at the time the fee agreement is executed and without filing a notice of the lien).

Despite this, Modtech attempts to draw a distinction between fees "related" to achieving a particular judgment, and fees on other matters, or, in other words, fees "unrelated" to achieving a particular judgment. Specifically, Modtech argues that attorney's liens are only exempted from the filing requirement in § 9310(a) if the lien was for fees "related" to the recovery. *Opening Brief*, at 15-17. M&M, on the other hand, argues that the enforceability of an unrecorded attorney's lien does not depend on whether or not the services are "related" to the recovery sought. *Reply Brief*, at 27-29.

The Court agrees with M&M and does not draw a distinction between recovery of fees incurred in matters "related" to a specific action and fees incurred in matters "unrelated" to a specific action. In fact, the primary authority upon which Modtech relies for this distinction

---

[4] It is unclear why Modtech cites to 11 U.S.C. § 544(a) and argues that this provision of the Bankruptcy Code entitles it to avoid the contractually created attorney's lien in this case. *Opening Brief*, at 15. That provision may not apply at all, but, at the very least, it in no way alters the relative positions of secured and unsecured creditors created by California law. *In re Wind Power Systems, Inc.*, 844 F.2d 288, 292 (9th Cir. 1988) (*citing McKenzie v. Irving Trust*, 322 U.S. 365, 370, 65 S. Ct. 405, 408, 89 L. Ed. 305 (1945) ("The Bankruptcy Code looks to state law to determine the effect and validity of such liens.")).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

actually cuts against Modtech, which the California Supreme Court's decision in *Cetenko* makes clear. In the *Cetenko* case, the California Supreme Court explained:

> If an attorney's claim for a lien on the judgment based on a contract for fees *earned prior to and in the action* cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of *the sum recovered in the latest lawsuit*. Such a result would be detrimental not only to prospective litigants, but to their creditors as well.

*Cetenko*, 30 Cal.3d at 536 (emphasis added).[5] The California Court of Appeals later applied *Cetenko* in *Bluxome Street Associates v. Fireman's Funds Ins. Co.*, and explained, "significant to our case, the court [in *Cetenko*] did not find that the fees incurred for matters *unrelated* to the action were not properly secured by the lien." *Bluxome Street Associates*, 206 Cal. App. 3d 1149, 1155, 254 Cal. Rptr. 198 (Cal. Ct. App. 1988) (emphasis added). It is also worth noting that the lower court decision affirmed by the California Supreme Court in *Cetenko* granted a motion seeking release of the entire proceeds of one judgment as payment for legal services rendered in that and several other matters. *Cetenko*, 30 Cal.3d at 531. *Cetenko* and *Bluxome Street Associates* do not distinguish between "related" and "unrelated" fees secured by a lien, and the cases do not require a filing statement to perfect an attorney's fees lien. The Court declines to depart from that here. Therefore, the Bankruptcy Court correctly determined that M&M was not required to file a UCC financing statement with the California Secretary of State in order to perfect the Lien with respect to services related or unrelated to Modtech's recovery of the funds in question.

IV. Conclusion

Based on the undisputed facts, this Court finds that M&M adequately provided the disclosures required by California Code of Professional Conduct Section 3-300 in order for the lien to be valid. Additionally, M&M was not required to file a UCC financing statement with

---

[5] In its Reply, Modtech emphasizes the part of the *Cetenko* opinion mentioning fees "earned *prior to* and in the action," *Cetenko*, 30 Cal.3d at 536, and argues that "the more sensible interpretation of the reference to 'prior fees' is one that . . . limits such 'prior fees' to those related to the subject of the action resulting in the fund in question." *Modtech Reply* at 5. Yet, Modtech cites no authority for its position and the language of the California Supreme Court's decision is clear.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# **CIVIL MINUTES - GENERAL**

JS-6

| Case No. | ED CV 10-466 PSG | Date | April 14, 2011 |
|---|---|---|---|
| Title | Modtech Holdings, Inc. *et al.* v. Monteleone & McCrory LLP | | |

the California Secretary of State in order to perfect the Lien with respect to services unrelated to Modtech's recovery of the funds in question. Accordingly, the judgment of the Bankruptcy Court is AFFIRMED.

**IT IS SO ORDERED.**


cc: U.S. Bankruptcy Court (06:08-24324-TD)